## Rodgers, Appellant, *v.* Tranter.

Argued May 3, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Parker and James, JJ.

*Gifford K. Wright* of *Alter, Wright & Barron,* for appellant, cited: Coburn v. Wheelock, 34 N. Y. 440.

*W. W. Stoner* of *J. M. Stoner & Sons,* for appellee, cited: Malone v. Stewart, 235 Pa. 99.

OPINION BY TREXLER, P. J., July 14, 1933:

This is a suit in assumpsit upon an indemnifying agreement. W. B. Rodgers, W. S. Diggs were endorsers for the Pittsburgh Steamboat Company on two notes of ten thousand dollars each. Rodgers alone was the holder and payee of two demand notes of the company aggregating $7,500. Rodgers and Diggs with Stamets, Brahm and Noah were endorsers of a note of the Steamboat Company for $35,000. These notes aggregated $62,500.

On March 8, 1930, an agreement was entered into in which there was a recital of these obligations with a statement attached showing the total indebtedness of $62,500. There was also set out the fact that the steamboat "Greater Pittsburgh" was mortgaged for $62,500 to a trustee to secure the stockholders of the company from any loss by reason of their endorsements, and, furthermore, that one hundred shares of the capital stock of the Pittsburgh Steamboat Company were set aside to compensate the indemnitors in the agreement for loaning their credit, and when the obligations, above referred to, were paid, they should receive from the stock thus set aside 10% of the amount of liability set forth opposite the signatures attached to the agreement. The giving of the mortgage and the setting aside of said stock was approved by all of the stockholders. The agreement in part reads as follows: "And we who designate an amount opposite our signatures hereto, in consideration of the premises, have covenanted and agreed, and by these presents do covenant and agree, jointly and severally, that we will guarantee the payment by the said company of the two notes held by W. B. Rodgers totaling seventy-five hundred ($7,500) dollars, representing money lent by him to the company, and any renewals thereof, and that we will indemnify and save harmless the said W. B. Rodgers, W. S. Diggs, W. K. Stamets,

Edward A. Brahm and W. P. Linn Noah of and from any and all liability by reason of their endorsement of the other notes set forth in Exhibit "A," and any renewals thereof, our liability to be limited to the amount set opposite our respective signatures hereto."

. . . . . .

| "W. S. Diggs | (Seal) | $15,000.00 |
| Wm. K. Stamets | (Seal) | $10,000.00 |
| W. B. Rodgers | (Seal) | $15,000.00 |
| F. A. Smith | (Seal) | $ 2,000.00 |
| John H. Phillips | (Seal) | $ 2,000.00 |
| Edward A. Brahm, Sr. | (Seal) | $ 3,500.00 |
| Jos. B. Shaw | (Seal) | $ 5,000.00 |
| Harry M. Smith | (Seal) | $ 2,000.00 |
| R. M. Smith | (Seal) | $ 500.00 |
| C. H. Jull | (Seal) | $ 5,000.00 |
| W. P. Linn Noah | (Seal) | $ 2,000.00 |
| Henry Tranter | (Seal) | $ 1,000.00" |

Henry Tranter, the defendant in this case, it will be noticed signed the agreement and the amount set back of his name is one thousand dollars. The steamboat "Greater Pittsburgh" burned and the proceeds, after some litigation, were appropriated to the payment of part of the obligations, above referred to. What remained, Rodgers paid, and with interest, there is owing to him the sum of $26,272.06. His statement of claim recites the above facts and avers that as the "indemnitors who signed the said agreement of indemnity are twelve in number, even if all of them were solvent and paid the amount due from each of them, the said Henry Tranter, would be liable for the full amount for which he agreed to be liable, to wit, $1,000." The affidavit of defense admits that the defendants owes 1/63 of the amount paid by Rodgers if the agreement, above referred to, is a valid agreement, that being the portion that the amount at his name bears to the entire obligation. A motion was

made for judgment for want of a sufficient affidavit of defense, and the court decided that the agreement was valid (which appellee now admits) and entered judgment for the amount, to which no valid defense appeared, being 1/63 of the amount of the notes remaining unpaid.

The question between the parties resolves itself into this: Was the defendant subject to an absolute liability of one thousand dollars, or was it an apportioned liability of 1/63 of the amount of the indebtedness. The lower court decided it was a proportioned obligation, i. e., that each person had to contribute a proportionate share to the amount required to pay the sum due the plaintiff. The contention of the plaintiff is that the parties to this agreement are all equally bound and each was required to contribute equally to the payment of the obligation until the limit attached to their respective names was reached. For example, if $5,500 were to be raised from the eleven guarantors each would be required to pay $500 irrespective of the limit of liability following each name, but after paying the $500, the "$500" man would drop out of the transaction, and so each of the ten remaining would be required to pay with the others to the liquidation of the debt, but would not be required to pay beyond the sum attached to his name.

We have come to the conclusion that as it was, without question, the intention of the parties that of the total of $63,000 set out in the contract each was to pay the amount set at his name, that there is no reason to believe that a different proportion should be used when the whole amount was not required and when the steamboat burned, the proceeds of the fire should operate as a proportionate deduction of the liability of each one, such proportion being based upon the amount for which each was liable. Were it not for the fortuitous event which produced the insurance

money, each would have paid the exact amount opposite his name.

The one hundred shares of the capital stock of the Pittsburgh Steamboat Company set aside to compensate the indemnitors were to be apportioned on the basis in par value of 10% of the amount of liability set forth opposite the signature of such indemnitor. What may be called the $15,000 man would get fifteen times as much as the $1,000 man and although the latter, under plaintiff's theory, is required to pay in round numbers one-third of the amount paid by the $15,000 man, he would get only 1/15 as much stock as the latter. Evidently in this phase of the contract the division was to be proportioned to the limits of liability and does not contemplate a result that, brought about by the reduction of the debt from another source, would produce the unequal result above stated. It has often been decided that "Where sureties are bound for the same thing, but in different amounts they are liable to contribute in proportion to the amounts of the obligation signed by them respectively." Brandt on Sureties, 3rd Ed., Vol. II, Section 314. (Malone v. Stewart, 235 Pa. 99, 83 A. 607.) It is true that the above reference is to a situation where there are separate obligations given, but we think the form employed in the present case, to express the intention of the parties, leads to the conclusion that the effect is the same as if each person had given a separate obligation. There is room for argument in support of either theory, but we repeat that we think under all the circumstances in the case and considering the recitals in the agreement, that the purpose was that there should be a proportionate payment of the indebtedness of the company by the indemnitors signing the agreement, and that if by reason of some of the money being procured from some other source the amount was partly liquidated that such

liquidation should enure to the reduction of the liability of the indemnitors in proportion to the amount for which they were liable.

The amount of the judgment entered was $417.20, but both parties agree that the correct amount is $447.20 with interest from February 4, 1933, therefore, the judgment is affirmed, the amount of the same being $447.20 with interest from February 4, 1933. Appellant to pay the costs.

----

SUPPLEMENTAL OPINION BY TREXLER, P. J., July 14, 1933:

The record discloses that the court below discharged the rule for judgment for want of a sufficient affidavit of defense. After a certiorari from this court had been filed, the lower court vacated the order theretofore made and entered judgment for the amount admitted to be due. This it could not do and subsequently admitting its lack of power (citing Drabant v. Cure, 274 Pa. 180 and Swartz v. Biben, 87 Pa. Superior Ct. 270), requested this court on appeal to "go further than merely passing upon the discharge of the rule and dispose of the case finally upon its merits." This we did and entered judgment for the amount admitted to be due. The appellant raised the lack of power in the lower court in his argument before us, but afterwards counsel for both sides agreed upon the amount involved in the controversy. As this could only be of assistance to this court in determining the amount admitted to be due, to wit, 1/63 of the entire liability, we were led to believe that the appellant had receded from his position. He now presents a petition asking this court to confine itself to the proper record.

The only matter before us is the refusal of the court below to enter judgment for want of a sufficient affidavit of defense. Instead of discharging the rule the court should have entered judgment for the amount

admitted to be due. Following the provision of the Act of April 18, 1874, P. L. 64 (see Fulton Farmers Association v. Bomberger, 262 Pa. 43) we remit the record to the court below with direction to enter judgment against the defendant for such sum as to right and justice may belong, being the amount admitted to be due, unless other legal or equitable cause be shown to the court below why such judgment should not be entered. The judgment heretofore entered by us is set aside.